# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00683-COA

**MICHEAL EDWARD SANFORD A/K/A MICHAEL EDWARD SANFORD**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                                                   APPELLEE

DATE OF JUDGMENT:              05/29/2024
TRIAL JUDGE:                   HON. BRAD ASHLEY TOUCHSTONE
COURT FROM WHICH APPEALED:     LAMAR COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                               BY: W. DANIEL HINCHCLIFF
                                   STACY L. FERRARO
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: SCOTT STUART
DISTRICT ATTORNEY:             HALDON J. KITTRELL
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED - 11/04/2025
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., EMFINGER AND WEDDLE, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     A Lamar County Circuit Court jury convicted Micheal Sanford of gratification of lust (Count I), statutory rape (Count II), and sexual battery (Count III). The trial court sentenced Sanford to serve fifteen years day for day in the custody of the Mississippi Department of Corrections (MDOC) for Count I, thirty years to serve day for day for Count II, set to run consecutively to the sentence in Count I, and thirty years day for day for Count III, set to run concurrently with the sentence for Count II.

¶2.     After the trial court denied his posttrial motion, Sanford appealed his convictions. He

argues that the trial judge should have disqualified himself after the victim's father called the judge prior to trial. We find that Sanford waived this argument and, alternatively, that the circumstances do not warrant disqualification of the trial judge. Accordingly, we affirm Sanford's convictions and sentences on all counts.

## Facts and Procedural History

¶3. Fifteen-year-old CC,[1] a minor female, lived next door to her aunt, Jessica Andrews, and would visit her aunt frequently. Forty-one-year-old Sanford began dating Andrews in 2020 and later moved in with her. Sanford began sending CC sexually inappropriate messages through Snapchat. His behavior toward CC progressed into several incidents of sexual abuse between May 2021 and May 2022, with Sanford's touching CC on her vagina, having CC touch his penis, and putting his penis into her vagina.

¶4. Suspicious of Sanford's constant attention toward CC, Andrews's relationship with Sanford became "[v]ery strained." In June 2022, the couple got into a verbal altercation that resulted in Andrews's children calling law enforcement to intervene, and Andrews immediately evicted Sanford from her home. Upon learning that Sanford would not be returning to the home, CC disclosed Sanford's sexual abuse to her family members, who then reported the abuse to the Lamar County Sheriff's Department. Law enforcement extracted evidence from both Sanford's phone and CC's phone, which revealed sexually explicit messages sent from Sanford to CC.

¶5. Sanford was indicted in April 2023 for two counts of gratification of lust in violation

---

[1] We use the initials used in the appellant's brief to protect the minor's identity.

2

of Mississippi Code Annotated section 97-5-23(1) (Rev. 2020) (Counts I and III), one count of statutory rape in violation of Mississippi Code Annotated section 97-3-65(1)(a) (Rev. 2020) (Count II), and one count of sexual battery in violation of Mississippi Code Annotated section 97-3-95(1)(c) (Rev. 2020) (Count IV). The State later moved to dismiss Count III (gratification of lust), and that count was nolle prosequied; Count IV (sexual battery) was renumbered as Count III. A jury trial was held on May 13, 2024.

¶6. The State presented testimony from Investigator Mike Wahl, Andrews, and CC.[2] Wahl testified that messages retrieved from CC's phone from Sanford contained descriptions of sexual acts Sanford desired from CC. Andrews testified that Sanford would often stay in the storage shed behind her house "all hours of night" and that he had a lock on the door. Andrews also said that CC "was found many times down there" with Sanford. When Andrews finally confronted Sanford about the problems in their relationship on June 1, 2022, he "went into a rage." Andrews left the house for a few hours, and when she returned, the argument resumed, with Sanford's "screaming" and "yelling." Andrews's children called the sheriff's department. Sanford was forced to leave the house, and Andrews packed up his belongings. When CC learned Sanford was leaving and not coming back, "she immediately welled up with tears in her eyes" and told Andrews some of the things that Sanford had been doing. Andrews called 911 and CC's mother. Approximately one month later, CC confessed other incidents to Andrews; so Andrews contacted Investigator Wahl.

---

[2] Because the issue on appeal does not concern evidentiary matters, and this case involved the sexual abuse of a minor, we have limited our discussion of the sexually explicit testimony and evidence at trial since it is irrelevant to our analysis.

¶7.     While the jury was out, the trial judge addressed a matter on the record that had already been discussed with counsel in chambers.  The trial judge said that when he observed the victim's father in the court the day before, he recalled that CC's father had called him around the time "these alleged events occurred."[3]  The trial judge realized that the case might come before him as a judge, and he explained to the victim's father that he "couldn't talk about any matters that could potentially come before the [c]ourt."  The judge then "ended the conversation."  The trial judge assured counsel that he "did not talk about any specific facts in this case" and that the victim's family were not "personal friends."

¶8.     With the jury in the box, CC testified that in June 2021 Sanford had sent her a Snapchat of himself with a towel around his waist.  Four months later, he sent her a message that he was watching pornography, which "grossed [her] out."  CC said things progressed to several incidents of sexual abuse, including oral sex and penetration of her vagina with his penis.  CC also claimed he would give her "some kind of crystal little things," which made her feel drugged.  She identified Sanford's tattoos in photos from messages she had saved.  CC testified that she did not tell anyone because she "was scared[] he was going to do something to me."

¶9.     Sanford testified, denying that he ever touched or sexually abused CC or that the social media accounts were his.  He said that the other witnesses were "lying."  Sanford suggested the explicit photos were from CC's male classmates.  With regard to a photo in evidence showing his tattooed arm and hand between a female's legs, Sanford claimed that

_____

[3] The crimes charged allegedly occurred between May 31, 2021, and May 31, 2022.

4

the other person was Andrews, not CC. In rebuttal, however, Andrews confirmed that she was not the person in the photo with Sanford's arm between her legs; she could identify his tattoo and her niece's shorts; so she said, "That is 100 percent [CC]."

¶10. The trial jury found Sanford guilty of all counts. For Count I, the trial court sentenced Sanford to serve fifteen years day for day in the custody of the MDOC. The trial court imposed a thirty-year sentence for Count II to be served day for day in MDOC's custody and to run consecutively to his sentence in Count I. For Count III, the trial court sentenced Sanford to serve thirty years day for day concurrently with the sentence imposed in Count II. The court also ordered Sanford to pay fines and assessments and to register as a sex offender upon release from custody.

¶11. Sanford filed a motion for judgment notwithstanding the verdict or for a new trial, alleging the court erred in (1) finding certain evidence was authenticated and admissible; (2) refusing to give certain jury instructions; and (3) denying his motion for a directed verdict. The trial court denied the motion, and Sanford now appeals his convictions.

**Discussion**

¶12. The only issue Sanford raises on appeal is whether the trial judge should have recused himself after admitting he had been contacted by CC's father prior to trial. As discussed, the trial judge stated for the record that around the time "these alleged events occurred," CC's father had called him. The judge explained to the victim's father that he "couldn't talk about any matters that could potentially come before the [c]ourt" and "ended the conversation." The trial judge assured counsel that he "did not talk about any specific facts in this case" and

5

that the victim's family "are not personal friends" of his.

¶13.    Defense counsel did not move for the trial judge's recusal, nor did counsel request a mistrial.   Sanford also did not raise this issue in his posttrial motion.   The Mississippi Supreme Court has held "that a defendant can waive an objection to the trial judge if there is no motion to recuse or motion to continue filed or if the defendant never raises the issue at any other point during the trial." *Day v. State*, 285 So. 3d 171, 179 (¶19) (Miss. Ct. App. 2019); *see also Goff v. State*, 302 So. 3d 676, 682 (¶20) (Miss. Ct. App. 2020) ("This Court and the supreme court have indicated many times that a defendant can waive an objection to the trial judge if there is no motion to recuse or motion to continue filed or if the defendant never raises the issue at any other point during the trial."). More recently, in *Walker v. Hasty*, 395 So. 3d 424, 436 (¶33) (Miss. Ct. App. 2024), we held that an appellant was procedurally barred from arguing "that the trial court was biased and denied her due process," as "the issue of unfair bias was never put before the court"; nor did she seek recusal. For these reasons, we find Sanford is procedurally barred from raising this argument now.

¶14.    Sanford nevertheless asserts for the first time on appeal that the trial judge should have sua sponte disqualified himself.  Canon 3(E)(1)(a) of the Mississippi Code of Judicial Conduct provides that "judges should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances . . . , including but not limited to instances where . . . the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." A judge is also prohibited from hearing a case in which he is connected to any

6

of the parties "by affinity or consanguinity" or in which he has an interest. Miss. Code Ann. § 9-1-11 (Rev. 2019); Miss. Const. art. 6, § 165 (1890). Nothing in the constitution or statute requires recusal in this instance.

¶15. "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." *Holton v. State*, 189 So. 3d 697, 700 (¶11) (Miss. Ct. App. 2016). "The judge is presumed to be qualified and unbiased, and the challenger bears the burden of overcoming this presumption." *Id*. In his argument, Sanford speculates that "[o]nly the most callous could remain unaffected" by the victim's testimony, and he asks our Court to "envision the father's anguish and the effects of his words." Thus, Sanford contends that the record "can be the very source of the necessary doubt."

¶16. We decline to engage in such speculation, and nothing in the court's record demonstrates that the trial judge had any personal bias, nor was there any appearance of impropriety. Rather, the trial judge forthrightly informed counsel of his brief conversation with CC's father, and the judge reassured counsel that he had not discussed the facts of the case with the father; nor did the judge have a personal friendship with the victim's family. We therefore find Sanford's argument fails to overcome the presumption that the trial judge was unbiased. This issue is waived and, alternatively, without merit.

¶17. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**